```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK

------------------------------X     Docket#
ELIEZER LAINE,                :     13-cv-02354-JBW-SMG
           Plaintiff,         :
                              :
    - versus -                :     U.S. Courthouse
                              :     Brooklyn, New York
                              :
MACHNE ISRAEL OF PHILADELPHIA,:
               et al.,        :     April 17, 2015
           Defendant          :
------------------------------X

         TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
            BEFORE THE HONORABLE STEVEN M. GOLD
             UNITED STATES CHIEF MAGISTRATE JUDGE
```

**A  P  P  E  A  R  A  N  C  E  S:**

<u>For the Plaintiff</u>:      **Paul P. Rooney, Esq.**
                          Ellenoff Grossman & Schole LLP
                          1345 Avenue of the Americas
                          11th Floor
                          New York, NY 10105

<u>For the Defendant</u>:      **Howard A. Wintner, Esq.**
                          The Abramson Law Group, PLLC
                          570 Lexington Ave
                          23rd Floor
                          New York, NY 10022

<u>Transcription Service</u>:  **Transcriptions Plus II, Inc.**
                          740 Sharon Road
                          Copiague, NY  11726
                          laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1       THE COURT: Okay, it's Judge Gold. Good
2  morning or good afternoon.
3       This should be Laine v. Machne Israel of
4  Philadelphia, et al., 13-cv-2354.
5       Counsel, we are on the record. I'd like an
6  appearance for plaintiff.
7       MR. ROONEY: Your Honor, this is Paul Rooney
8  from Ellenoff Grossman & Schole for plaintiff Eli Laine.
9       THE COURT: Thank you.
10       for the defendants?
11       MR. WINTNER: Howard Wintner of The Abramson
12  Law Group.
13       THE COURT: Thank you, everybody.
14       I don't know if you're aware, but Judge
15  Weinstein is not in the courthouse today. The defendant
16  -- excuse me, the plaintiff filed a proposed order to
17  show cause concerning some subpoenas and Judge
18  Weinstein's chambers asked me to address that with you at
19  least preliminarily, in light of Judge Weinstein's
20  unavailability today.
21       I have docket entry 75. I have docket entries
22  79, 78 and 80 and Mr. Wintner, I know that my chamber's
23  staff imposed upon you to participate today, even though
24  the plaintiff's papers were filed only earlier today or
25  overnight and I appreciate how graciously you responded

3

Proceedings

1  to that and that you were able to get something before
2  the Court putting forth your position.
3          I am looking at your memo, Mr. Wintner, and I
4  must say it raises some questions in my mind.
5          MR. WINTNER:  Uh-hum.
6          THE COURT:  I'm going to put the standing issue
7  aside and the reason I do that, is that it seems to me
8  that this is less about whether plaintiff has a right to
9  object to the existence of the subpoenas and more about
10 whether plaintiff has a right to object to the tardy
11 disclosure of documents and witnesses.
12         More specifically, as I have reviewed the
13 docket sheet, the understanding I gleaned, is that there
14 was a proceeding before Judge Weinstein on February 5th,
15 2015.  You assert that it was only during that proceeding
16 that your thoughts about what was necessary or the
17 anticipated April bench trial crystalized.
18         But at that time, Judge Weinstein provided you
19 until March 30th to list the witnesses and documents you
20 would rely upon at that proceeding and that date has come
21 and gone.  What basis do you contend that you have for
22 presenting testimony and documents that weren't disclosed
23 within the generous time frame offered by the presiding
24 judge?
25         MR. WINTNER:  Two things, your Honor.  First,

                                                                    4
                              Proceedings

 1  we requested the information from plaintiff during
 2  discovery, refused to provide it.
 3              THE COURT:  And you made a motion to compel
 4  about that when?
 5              MR. WINTNER:  No, I didn't make the motion to
 6  compel.
 7              THE COURT:  I see.  Go ahead.
 8              MR. WINTNER:  Because at the time -- at the
 9  time I didn't think it was that relevant.  Perhaps more
10  importantly at his deposition, the plaintiff testified
11  that he didn't work for any other school.  So I assumed
12  his testimony was accurate.
13              My client asked me about a week ago, about a
14  few days before I served the subpoena, I told him that
15  and he said no, we're pretty sure he worked for Yeshiva
16  Novominsk.  So I didn't properly serve the subpoenas.
17              So if anything I was misled by the plaintiff's
18  deposition testimony.
19              THE COURT:  And when did you find out that you
20  had a good faith basis to believe that there was such
21  employment?
22              MR. WINTNER:  About a week -- a week ago.
23              THE COURT:  Mr. Rooney, how is your client
24  prejudiced if these subpoenas are served?
25              MR. ROONEY:  Well, for the very reasons that

                                                                5
                          Proceedings

1  you said, your Honor.  But may I address the idea that
2  Mr. Laine misled anyone?
3           THE COURT:  Sure.
4           MR. ROONEY:  In his --
5           THE COURT:  You can say whatever you would like
6  to say.
7           MR. ROONEY:  Okay.  In his deposition, he was
8  asked about an entity called ECL Associates and he was
9  asked what its revenues were in 2007.  And he said there
10 were not total revenues in 2007 or in 2000 or 2014.  It
11 was doing certain consulting.  It was what they call
12 moonlighting from 8 to 10 or 10:30 at night giving advice
13 on many different areas of life, okay?
14          Then they asked him, "Were you ever involved in
15 supervision of any other schools?"  And he answered,
16 "No," which is true.  Now as far as when they learned
17 about any involvement of Mr. Laine -- that is of Rabbi
18 Brennan and Yeshiva Novominsk getting advice from him,
19 they knew about it, your Honor, as far back as 2006.  In
20 2008, they had a conversation, my client and Rabbi
21 Shemtov (ph.) about Rabbi Brennan consulting with him and
22 we have a tape of it.  It's in Yiddish but it was
23 disclosed to them in discovery.
24          In 2012, at a funeral for an emissary of this
25 organization in Chicago, one Rabbi Moscowitz, Daniel

Proceedings                                                6

1  Moscowitz, Shemtov saw Brennan and tried to fish out some
2  information from him about Mr. Laine and he asked --
3  Shemtov asked Rabbi Brennan, "How's your friend Laine
4  doing?"  And Brennan said, "My friend Laine?  You should
5  know, he's working for you."
6           And Shemtov said to him, "Well, I thought he
7  was working for you."  And Brennan said, you know,
8  basically, "Stop with the jokes.  You know, we've talked
9  about this before."  And Shemtov asks Brennan, "Did you
10 pay him?"  And Brennan said, "Yes, I did."  And Shemtov
11 asks, "How much?"  And Brennan said, "Not enough to make
12 a living."
13          Now if you need an affidavit for this
14 conversation, I bet I can get one from Rabbi Brennan but
15 none of that what I said is in the record, but this is
16 what my client tells me.
17          So the notion that they had no idea that my
18 client had any connection to Rabbi Brennan till a week
19 ago is just not true.  And as far as whether it
20 crystalized or they knew the importance, this case has
21 been pending for two years and discovery and litigation
22 have to end at some point.
23          So put it any other way, it's not our problem
24 that they only decided they wanted this information a
25 week ago.

```
                                                              7
                          Proceedings
 1              MR. WINTNER:  Well, that's -- first of all, I
 2  disagree about the deposition testimony.  I asked if he
 3  was involved in the supervision of any other school and
 4  he said no.
 5              THE COURT:  Okay.  Thanks.
 6              MR. WINTNER:  And one other thing, I -- you
 7  know, I have no idea, you know, that -- in terms of the
 8  discussions with Rabbi Shemtov, you know, whether that's
 9  true or not true.
10              THE COURT:  These are non-parties that are the
11  subject of these subpoenas; correct?
12              MR. ROONEY:  Yes, your Honor.
13              MR. WINTNER:  Yes, it's very limited documents.
14  They may on its face look broad but it's basically we
15  want to see, you know, if they have documents --
16              THE COURT:  Thank you.
17              MR. WINTNER:  -- about what Laine did and what
18  he was paid and that's what I want them -- they can test
19  -- they'll tell me the truth.  I don't -- you know, I
20  don't see the prejudice in that.
21              THE COURT:  The hearing before Judge Weinstein
22  is a bench trial, not a jury trial, correct?
23              MR. WINTNER:  Correct.
24              MR. ROONEY:  Yes, your Honor.
25              THE COURT:  All right.  I am going to deny the
```

                                                                    8
                              Proceedings

1  motion to quash.  I'm doing it with some reluctance, Mr.
2  Wintner, because I believe you had ample time to ferret
3  out the information you needed for this proceeding and
4  that this is very tardy on your part and if I were
5  presiding at the trial, I might well preclude it on that
6  basis.
7            However, if the subpoenas are not served, and
8  the motion to quash is granted, I have essentially
9  deprived Judge Weinstein of the opportunity to evaluate
10 the significance of the material relative to the
11 procedural default of the defendant and I choose not to
12 do that, particularly in the context of a bench trial
13 because in supervising a bench trial, the judge will have
14 the opportunity if he decides it appropriate, to defer
15 consideration of the evidence until the plaintiff has had
16 an opportunity to take reactive discovery to this tardy
17 disclosure of documents and witnesses.
18           The law favors dispositions on the merits.
19 Those dispositions are more likely when the finder is
20 fully informed by the evidence and any prejudice from the
21 tardy disclosure can be corrected and remedied if Judge
22 Weinstein decides to permit this evidence to be heard.
23 So the motion is denied.
24           Mr. Wintner?
25           MR. WINTNER:  Yes.

```
                                                               9
                         Proceedings
 1            THE COURT:  Given that your tardiness triggered
 2   this problem, you'll order the minutes of today's
 3   proceeding on an expedited basis and see that they are
 4   filed with the Court as soon as practicable, so that they
 5   are available for Judge Weinstein's review, well before
 6   the trial.
 7            MR. WINTNER:  Yes, your Honor.
 8            THE COURT:  Is there anything --
 9            MR. WINTNER:  How do I order this -- I'm sorry.
10            THE COURT:  You can stay on the line and my
11   clerk, Kevin Jason, will give you specific instructions
12   about how to order the minutes on an expedited basis.
13            Mr. Rooney, is there anything further?
14            MR. ROONEY:  No, your Honor.
15            THE COURT:  Mr. Wintner, is there anything
16   further?
17            MR. WINTNER:  No, your Honor.
18            THE COURT:  It's my pleasure to have spoken to
19   you today, counsel.  Good luck with your hearing.
20            MR. WINTNER:  Thank you very much, your Honor.
21            MR. ROONEY:  Thank you.
22            THE COURT:  Goodbye.
23            MR. WINTNER:  Bye-bye.
24                 (Matter concluded)
25                      -o0o-
```

10

1

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **19th** day of **April**, 2015.

*Linda Ferrara*
Linda Ferrara
CET**D 656
Transcriptions Plus II, Inc.